Alexander J. Urbelis
AUrbelis@crowell.com
Preetha Chakrabarti
PChakrabarti@crowell.com
**CROWELL & MORING LLP**
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000
Facsimile: (212) 223-4134

*Attorneys for Plaintiff
Shulim Leifer*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SHULIM LEIFER,**<br><br>　　　　　　　　　Plaintiff,<br><br>　– against –<br><br>**JOHN DOES 1–9,**<br><br>　　　　　　　　　Defendants. | Civil Action No.: 22-CV-1770-WFK-SJB<br><br>**COMPLAINT**<br><br>*DOCUMENT PHYSICALLY FILED* |

Plaintiff Shulim Leifer, by and through his attorneys, Crowell & Moring LLP, for his Complaint against Defendants John Does 1–9, hereby alleges as follows:

## NATURE OF THE ACTION

1. This case arises out of Defendants, John Does' ("Does"), defamatory postings about Plaintiff Shulim Leifer ("Leifer") on the social media platform, Twitter, fraudulent and unauthorized access of Leifer's social media accounts, and continued threats and harassment of Leifer on Twitter.

2. Leifer seeks injunctive relief and damages arising out of Does' defamatory postings, fraudulent and unauthorized access of Leifer's accounts, and intentional infliction of emotional distress.

- 1 -

3. These actions have already harmed Leifer and will continue to harm Leifer until such time as the Does are identified and ordered to cease (i) making any and all defamatory remarks against Leifer, (ii) accessing without authorization Leifer's social media accounts, and (iii) harassing and threatening Leifer. As a result, these actions have created in Leifer a state of distress and fear and have thwarted his and his family's ability to move and live freely within his community.

4. This lawsuit asserts New York state common law claims for (a) defamation per se and (b) intentional infliction of emotional distress, and computer fraud and abuse pursuant to The Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

## PARTIES

5. Plaintiff Shulim Leifer is a natural person that is domiciled in Brooklyn, New York, where he resides with an intent to stay indefinitely.

6. Defendants John Does 1–9 are various natural persons unknown to Leifer, with unknown domicile, who published defamatory content ("Defamatory Articles") on the social media platform Twitter and accessed Leifer's social media accounts without authorization.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because, upon information and belief, some or all of the Defendants are located outside the State of New York.

8. This Court additionally has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 based on the claim under The Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

9. The venue in this action is proper within the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), in that (i) Leifer is a resident of New York; (ii) the claims

asserted by Leifer arose within this judicial district and (iii) there is no district in which this action may otherwise be brought.

10. Defendants are subject to personal jurisdiction in the State of New York and the federal district court for the Eastern District of New York because (i) they caused injury to persons located in New York, (ii) upon information and belief, some of the Defendants are located inside the State of New York and this district, and (iii) there is no other district in which this action may otherwise be brought.

## BACKGROUND FACTS

11. Leifer was born, raised, and remains a member of the Hasidic Orthodox Jewish community ("Hasidic Community") in New York City, largely located in Brooklyn. Additionally, Leifer's family is part of the Hasidic Community. Leifer is married and has three children.

12. The Hasidic Community is both large and very intertwined. The community could accurately be called a subculture or insular kinship group. Many Hasidic communities exist around the world, including the robust one Leifer is a member of in Brooklyn.[1]

13. Lack of formal and/or secular education is an issue within the Hasidic Community. Formal education consistent with standard public school education requirements is not provided for boys in the Hasidic Community. In general, boys may receive an education consistent with a 4th grade public school education.

14. For example, a complaint filed by Young Advocates for Fair Education ("YAFFED") with the New York City Department of Education and New York State Department of Education in 2015 called for consistency in educational requirements across public and private schools.[2] The investigation has been ongoing and involves reviewing the

---

[1] See https://www.pbs.org/alifeapart/intro.html.
[2] See https://www.nytimes.com/2018/12/03/nyregion/yeshivas-new-york-schools-education.html.

practices of schools within the Hasidic Community.

15. Leifer himself only received the equivalent of a 4th grade education. In 1997, after seven years in school, Leifer was asked by school administration to permanently leave his 7th year classroom for correcting his teacher and was also subjected to corporal punishment in that same school.

16. Due to his upbringing within the Hasidic Community, Leifer has minimal education. Nonetheless, Leifer, since 2010, has been able to pursue a successful career as an executive in a niche area of home healthcare, which is an industry heavily represented by the Hasidic community. Given Leifer's lack of formal education, home healthcare is one of the few career areas available because of how many members of the Hasidic community own businesses in this field.

17. Leifer began working in the field of home healthcare in 2010. Leifer's first job was as a Marketing Account Manager. He continued to work at the same home healthcare agency for eight years and eventually became the Executive Director of Operations. Leifer has briefly worked at a few other home healthcare agencies since 2018 as a Director or Executive Officer. Leifer's current resume is attached as Exhibit No. 1.

18. Leifer has had an impressive and successful career in home healthcare even with a lack of formal education. As many of the home healthcare agencies are owned by members of the Hasidic community in New York City, Leifer's reputation within the field of home healthcare and the Hasidic community are vital to his career success. Given Leifer's education level, he relies on his reputation in his career to maintain employment.

19. Leifer, around the fall of 2019, became a vocal, public advocate against social ills that exist within the Hasidic Community. Namely, Leifer advocates for educational reform and advancements within the Hasidic Community. Leifer advocates for reforms of other issues

as well, many of which naturally flow from the lack of education within the community. Recently, Leifer also became an advocate for responsible safety practices during the COVID-19 pandemic.

20. Leifer's advocacy has included: various articles in publications such as the Daily News; creating an Independent Expenditures Committee in the New York City mayoral race; involvement with YAFFED; and appearing as a stakeholder in the New York Department of Education hearings regarding proposed regulations overseeing Yeshiva related education, all of which Leifer has advanced through his social media presence that has taken him years to develop.

21. Leifer is one of few educational advocates situated in his unique position—he remains a member of the Hasidic Community that he is critiquing. Indeed, Leifer is one of the only people publicly advocating for educational reforms from within the community.

22. Leifer's reputation is essential to his advocacy. His excellent reputation provides credibility, allows him to substantiate his role as an advocate, and to generally withstand unfounded criticism.

23. Leifer's advocacy has been addressed by various publications worldwide. These publications include the New York Times,[3] the Jerusalem Post,[4] the Jewish Telegraphic Agency,[5] (worldwide Jewish community reporting), the Forward,[6] (American Jewish community reporting), News12 Westchester,[7] and the Gothamist.[8] Leifer's reputation

---

[3] See https://www.nytimes.com/2020/04/21/nyregion/coronavirus-jews-hasidic-ny.html.
[4] See https://www.jpost.com/diaspora/seeing-the-coronavirus-affair-in-new-york-from-the-orthodox-perspective-645887, and https://www.jpost.com/diaspora/after-supreme-court-ruling-new-yorkers-go-back-to-synagogue-651101.
[5] See https://www.jta.org/2020/01/13/united-states/new-york-is-trying-to-reform-the-orthodox-yeshiva-system-which-some-graduates-say-barely-taught-them-to-speak-english.
[6] See https://forward.com/news/466668/hasidic-brooklyns-child-matchmaker-is-under-investigation/, https://forward.com/news/464423/in-the-ultra-orthodox-world-raising-1-million-for-covid-victims-is-easier/, https://forward.com/news/476631/rabbi-yoel-roth-hasidic-child-marriage-heichel-hakodesh-breslov/, and https://forward.com/news/448114/how-new-yorks-ultra-orthodox-are-responding-to-george-floyd-protests-blm/.
[7] See https://westchester.news12.com/leaked-video-appears-to-show-monsey-teacher-beating-yeshiva-student-in-class-41246272.
[8] See https://gothamist.com/news/orthodox-borough-park-residents-burn-masks-beat-dissenters-over-covid-lockdown,

continues to grow within the worldwide Hasidic Community.

24. Leifer's advocacy has received pushback and opposition. There are many Hasidic Community defenders on Twitter that promote the traditions of the community and criticize Leifer. Leifer is known in the community for his Twitter presence and is considered an iconoclast. A rapid response team of many social media accounts (some of which are anonymous or fictitious personalities) are often activated any time Leifer or other advocates make progress or an advocacy-based event occurs. The goal of these responses is to provide a counter narrative discrediting the advocates.

25. Exact locations of the Twitter account users are not known and some anonymous Twitter accounts have had prior identifiers for locations outside of New York, such as for Lakewood, New Jersey or even Vienna, Austria. Leifer is a name known within the international Hasidic Community, based on the various publicity of his activism, and it is likely that Leifer's defamers exist in Hasidic communities outside of New York. Indeed, some of the English language grammatical errors of defamatory statements made on social media suggest residence outside the United States. *See infra* ¶ 30.

26. Leifer acknowledges as a public advocate that he will receive criticism from others. However, in the last year, general criticism and internet trolling has evolved to include intentional false allegations asserted specifically to malign Leifer's character and discredit Leifer as an activist.

27. Leifer was first impugned by defamatory tweets on January 6, 2021. The tweets came from the account @KolYisrael. An initial tweet questioned "Starting to call people names, should we discuss here why you were fired from your job?" And a follow up tweet stated "violations #metoo[.]" @KolYisrael defamed Leifer by alleging he was fired from his

---

and https://gothamist.com/news/brooklyn-ultra-orthodox-jewish-coronavirus-cases.

job because of "me too" violations, insinuating Leifer engaged in inappropriate behavior with women at his place of employment. These tweets are attached as Exhibit Nos. 2, 3.

28. But in fact, Leifer had not been fired from his job, and these accusations were false. Accordingly, Leifer responded to this tweet, on the same day, stating "Lie and falsehood" in Hebrew. @KolYisrael responded by saying "This is no laughing matter. Denial is the initial response of everyone exposed for such matters. Should we get into the gory details? Name names?" Leifer again responded by saying "Yes please[,]" immediately illustrating he believed the account had no evidence to support the accusation. These tweets are attached as Exhibit Nos. 2, 3.

29. @KolYisrael is an anonymous account, but is not an unnamed defendant (John Doe) in this complaint because the tweets from @KolYisrael are from over one year ago and would be barred by statute of limitations for defamation in New York. However, the tweets are included for context.

30. Leifer received a further defamatory tweet on May 26, 2021. The tweet came from the account **@erpsmosh**. The tweet alleged "Or else ull look like shulim liefer u c he was fired from a job for harrasing a woman . Y ? Cuz in his desperation to look with it and cool he thought u have to harrass woman" (errors in original). @erpsmosh defamed Leifer by alleging he was fired from his job because he harassed female colleagues. This tweet is attached as Exhibit No. 4.

31. @erpsmosh is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

32. Leifer received further defamatory tweets on June 23-24, 2021. The tweets came from the account **@KleinMatt1** and tagged the account @Yochidonn. These tweets alleged "You were fired from a home care agency," "Leifer dumbhead. I'm told you have lots

of skeletons and you are a scumbag," and "You are lying. You were 'fired' because you behaved like a animal." @KleinMatt1 defamed Lefier by similarly alleging he was fired from his job because he "behaved like a animal." These tweets are attached as Exhibit No. 5.

33. Terry Kleinman is the name associated with the @KleinMatt1 Twitter account. Terry Kleinman, upon information and belief, is a fake name. Thus, @KleinMatt1 is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

34. On the same day, June 23, 2021, Leifer received another defamatory tweet from a Twitter account called **@Ralphoppy**. The tweet alleged "Pls before u defend shulim liefer go check his past y he was fired 2 jobs in 2 years. Mayb speak to women who filed the complaints. Believe what u want abt education but shulim liefer shud not be ur guy[.]" @Ralphoppy defamed Leifer by alleging he was fired from two jobs because of complaints filed by women, again insinuating Leifer engaged in inappropriate behavior with women at each of his work places. These tweets are attached as Exhibit No. 6.

35. @Ralphoppy is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

36. Leifer received further defamatory tweets on July 29, 2021. The tweets came from the account **@YankyStern4**. Two tweets from this account referred to false and nonexistent sexual harassment allegations against Leifer. These tweets are attached as Exhibit No. 7.

37. @YankyStern4 is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

38. Another individual, Rabbi Eliezer Brand, tweeted about Leifer's employment in November 2020 using the Twitter account @RabbiEBrand. These tweets precede the aforementioned anonymous tweets. These tweets similarly alleged that Leifer lost his job due

to complaints filed by women regarding sexual harassment. However, the Twitter account @RabbiEBrand has been deleted.

39. One tweet from November 21, 2020 was captured prior to the deletion of the account. Brand falsely claimed that ten of Leifer's colleagues from his prior place of employment confirmed the bogus allegations. The screenshot of that tweet has been attached as Exhibit No. 8.

40. Rabbi Eliezer Brand is a known individual. Eliezer Brand was the owner of the @RabbiEBrand Twitter account. Brand is not a defendant in this matter because the referenced defamatory tweets occurred outside of the statute of limitations for defamation.

41. Leifer held his previous job with Preferred Home Care of New York for close to a decade. After these false allegations occurred, Leifer discussed these allegations with his prior employer, and his employer confirmed they had not spoken to anyone about his employment or his eventual choice to leave the company.

42. Another individual, Yochonon Donn, tweeted that Mr. Leifer's last place of employment terminated him because of "metoo" allegations using the Twitter account @Yochidonn in December of 2021. Donn is not a defendant in this matter because his identity is known and he has been served a cease and desist demand letter with which he has complied to date. The cease and desist demand letter is attached as Exhibit No. 9.

43. In addition to defamatory tweets, Leifer has received threatening tweets. The account **@ConservativeYi1** tweeted a picture of a passage in the Talmud. The highlighted passage is from Bava Metzia 59a and translates to "One who engages in intercourse with a married woman before witnesses and with forewarning, his death is by strangulation." The tweet suggests that this type of punishment is appropriate for Leifer. The tweet is attached as Exhibit No. 10.

44. @ConservativeYi1 is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

45. After the initial defamatory tweet in January 2021, further Twitter accounts have continued to circulate and amplify the libelous allegation that Leifer harassed women at his prior place of employment and was terminated due to that harassment. These tweets have come from both known and unknown individuals, but mostly anonymous accounts.

46. Examples of additional accounts that have circulated, discussed, or in other ways perpetuated the false, defamatory allegations include @Rabbi_Rosenthal, **@Frauholla3**, **@BaruchSilverst1**, and **@yafered**. Examples of these tweets are included as Exhibit Nos. 11, 12.

47. Upon information and belief, most of these accounts are also anonymous and are unnamed defendants in this complaint. @Rabbi_Rosenthal is an account owned by an individual named David Rosenthal.

48. Another anonymous account, **@ShuIimLeifer**, attempted to impersonate Leifer's twitter account, @ShulimLeifer, using a capital "I" to replace the lowercase "l" in Leifer's first name. This impersonation account uses the same image of Leifer as a child that Leifer's own Twitter account previously used. Examples of the online impersonation are included as Exhibit Nos. 13–16.

49. @ShuIimLeifer is an anonymous account and is an unnamed defendant (John Doe) in this complaint.

50. In addition to the false, libelous, and defamatory statements described above, upon information and belief, unknown persons have made fraudulent and unauthorized access to Leifer's personal social media accounts, specifically his Twitter account. This unauthorized access to Leifer's Twitter account would grant access to all of Leifer's private direct messages

with other activists and vulnerable members of the Hasidic community with whom he communicates. Leifer frequently and consistently utilizes the instant messaging feature of Twitter and is sent 'leads' by vulnerable members of the community through this messaging tool. Leifer considers Twitter, and his ability to reach and contact members of the Hasidic community, the most important tool of his advocacy.

51. The access records of Leifer's Twitter account indicate continuous and persistent access via an unknown, third-party Slack[9] platform account. Leifer consistently accesses his Twitter account via his iPhone and is unaware of why any Slack access would have occurred. Screenshots of Leifer's Twitter access history are included as Exhibit No. 17.

52. Threat actors have commonly used Slack to gain fraudulent and unauthorized access to personal social media accounts.[10]

53. The parties behind the unauthorized account access of Leifer's Twitter account are unnamed defendants (John Does) in this complaint.

54. Leifer has attempted to stop the defamation by contacting Twitter Support and by serving the known individuals with Cease and Desist Demand Letters. Leifer, without the support of Twitter, has not been able to act against the anonymous accounts that continue to spread defamatory statements.

55. The continued circulation of the defamatory allegations about Leifer affect his employment, activism and family life. At a minimum, the allegations call into question Leifer's character, which affects his employability and his standing in the Hasidic Community of Brooklyn, where he had already faced ostracization because of his activism. The persistent false allegations that bogus and anonymous social media accounts continue to levy against

---

[9] The "Slack" platform is a workplace communication tool. Slack is an instant messaging system (similar to text messages), but allows for group chats, document sharing, and other add-ins that benefit workplace communication. See https://slack.com/.
[10] See https://mashable.com/article/slack-key-to-twitter-hack and https://www.haekka.com/blog/slack-phishing.

Leifer prevent him and his family from feeling safe within their own community.

56. Activists within the Hasidic Community have been labeled dissidents and subsequently been the targets of violent attacks, and violence and intimidation have been used in the Hasidic Community of Brooklyn to silence activism. For example, an individual named Aron Rottenberg was the victim of arson after praying outside of the designated community[11] and Rabbi Nuchem Rosenberg had chemicals thrown in his face because of his advocacy against child sexual abuse.[12]

57. Leifer fears that if the defamatory statements are not stopped on Twitter both he and his family may be in danger of violent attacks.

58. Leifer's employability has been affected by the defamatory allegations. The defamatory tweets have made Leifer unemployable in the Hasidic Community, especially when compounded with his lack of employment prospects that his limited education affords him. Leifer relied on his reputation in his career to find success in the field of home healthcare, which is heavily represented by the Hasidic community. But now Leifer is unable to find employment because of the attacks on his character.

59. One of Leifer's former employers even received frantic phone calls from community members begging for tweets to be removed from Twitter while he was employed.

60. Leifer has lost two jobs within the last few years. Each of these jobs were lost during a socially polarized time where Leifer's activism was vivid. Each job was lost abruptly with no indication of poor performance. Upon information and belief, Leifer lost these jobs due to defamation and pressure from within the Hasidic community. Leifer currently remains unemployed and has struggled to secure employment.

---

[11] See https://www.cbsnews.com/newyork/news/new-square-arson-victim-blames-attack-on-communitys-religious-intolerance/.
[12] See https://www.nytimes.com/2012/12/12/nyregion/rabbi-nuchem-rosenberg-doused-maybe-with-bleach-in-williamsburg.html?referringSource=articleShare.

## COUNT I:
## DEFAMATION PER SE

61. Leifer hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

62. All of the statements made by Does and pleaded herein are false as to Leifer.

63. All of the statements made by Does and pleaded herein were made with malice, or in the alternative, gross negligence.

64. The Does published these statements on Twitter, without authorization from Leifer, where everyone in the world has access to the statements, and specifically intended for the statements to reach the Brooklyn Hasidic Community of which Leifer is a member and through which Leifer earns a living.

65. Upon information and belief, the Does intentionally disseminated the Defamatory Articles in order to create as much awareness about and damage to Leifer within his community.

66. The publication of the Defamatory Articles has already caused Leifer irreparable harm in that Leifer has lost his job and lacks employability given the false attack on his character within the community where he both lives and works.

67. The Does are aware that the statements are false, or at a minimum did not have any reasonable basis to believe that the statements are true.

68. Upon information and belief, the Does had no basis to make the Defamatory Articles on Twitter or elsewhere and invented the allegations based on their own animus towards Leifer's advocacy within the Hasidic Community.

69. Upon information and belief, the Does conducted no independent research on whether their claims were in fact true.

70. The Does' claims being made public in the Hasidic Community have harmed,

and will continue to harm, Leifer based on the false belief that he has harassed women.

71. As long as the Does are permitted to continue perpetuating these false allegations, Leifer will be harmed through the continued inability to be an accepted member of the Hasidic Community, affecting Leifer's employability and lifestyle.

72. The Does' statements were made in a grossly irresponsible manner by which the Does knew, or reasonably should have known, that their statements were false and would inflict injury on Leifer in his profession.

## COUNT II:
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

73. Leifer hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

74. The Does wrongfully and intentionally, without authority, accessed a protected computer in order to gain access to Leifer's personal social media accounts.

75. These actions were unauthorized because Leifer never provided his social media account information to any other individual or provided permission to access his social media to any other individual.

76. As a direct and proximate result of Does' conduct in violation of the CFAA, Leifer has suffered and will continue to suffer damages in excess of $5,000.

77. Upon information and belief, Does' conduct will continue unless enjoined by this Court.

## COUNT III:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78. Leifer hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

79. The Does intentionally published specific unfounded allegations affecting both

Leifer's professional and personal life.

80. The Does had no basis or knowledge to support their publications and published the defamatory material with the goal of maligning Leifer. In fact, knowingly "leaking" false information about another person often only has the goal of maligning that person's character.

81. Upon information and belief, the Does are aware of other violent attacks against members of the Hasidic Community identified as dissidents or advocates against the traditions of the Hasidic Community.

82. The Does understood the nature of the Defamatory Articles would lead to employability concerns, familial concerns, other issues leading to emotional distress, and potentially violent attacks.

83. The Does' retaliatory actions were made in an effort to humiliate and undermine Leifer and to punish him personally and professionally as a result of his advocacy.

84. In publishing the Defamatory Articles, the Does knew, or in the exercise of reasonable behavior should have known, that their actions were intolerable.

85. In publishing the Defamatory Articles, the Does acted intentionally and with knowledge that their punitive actions would cause severe emotional distress to Leifer.

86. The Does' actions have caused and continue to cause Leifer severe emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants and each of them, jointly and severally, as follows:

    a. Awarding Plaintiff an injunction against Defendants;

    b. Awarding Plaintiff actual damages for past lost wages and benefits and future lost wages and benefits, in an amount to be determined at trial, but that would be in excess of $75,000;

c. Awarding Plaintiff damages for emotional distress and humiliation in an amount to be determined at trial;

d. Awarding Plaintiff the costs of this action together with reasonable attorney's fees;

e. Awarding Plaintiff pre- and post-judgment interest in the statutory amount; and

f. Such other and further relief as the Court deems equitable, just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues triable as of right to a jury.

March 29, 2022                                   Respectfully submitted,


*/s/ Preetha Chakrabarti*
Alexander J. Urbelis
AUrbelis@crowell.com
Preetha Chakrabarti
PChakrabarti@crowell.com
**CROWELL & MORING LLP**
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000
Facsimile: (212) 223-4134

*Attorneys for Plaintiff
Shulim Leifer*