UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
——————————————————————X
SHULIM LEIFER,

           Plaintiff,           **MEMORANDUM & ORDER**

    -against-                      22-cv-1770 (NRM) (CHK)

JOHN DOES 1-9, LEIBY FROIMOVITZ,
RAFAEL OBSTFELD, and JOSEPH
MENCZER a/k/a YOSSI MENCZER,

           Defendants.
——————————————————————X

**NINA R. MORRISON**, United States District Judge:

      Plaintiff's Amended Complaint invokes this Court's federal question jurisdiction. Amended Complaint ("Am. Compl.") ¶ 11, ECF No. 46 (May 20, 2025). On October 2, 2025, Plaintiff was ordered to show cause why his second cause of action, pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, should not be dismissed for failure to state a claim. Dkt. Order dated Oct. 2, 2025. Plaintiff filed a corrected Letter Response ("Pl. Resp.") on November 7, 2025. ECF No. 63. Upon review of this Response, as well as Plaintiff's Amended Complaint, the Court *sua sponte* dismisses Plaintiff's CFAA cause of action for failure to state a claim.[1] Having dismissed this claim, and finding that there is no alternative basis for the Court's jurisdiction, the Court declines to exercise supplemental jurisdiction

---

[1] Defendant Rafael Obstfeld did submit a request for a pre-motion conference on an anticipated motion to dismiss. Ltr., ECF No. 53 (June 30, 2025). However, Defendant Obstfeld did not challenge the legal sufficiency of Plaintiff's CFAA claim in this pre-motion conference submission. Accordingly, the Court's evaluation of these deficiencies is conducted *sua sponte*.

1

over Plaintiff's state law claims and dismisses them without prejudice to Plaintiff to pursue these claims in state court.

"The district court has the power to dismiss a complaint sua sponte for failure to state a claim." *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (citing *Robins v. Rarback*, 325 F.2d 929 (2d Cir. 1963), *cert. denied*, 379 U.S. 974 (1965) and 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1969)); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (4th ed. 2025) ("Additionally, if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties."); *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 14 (1st Cir. 1998) (holding that "such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond."). Here, the Court provided Plaintiff the opportunity to respond, and Plaintiff availed himself of that opportunity.

In evaluating whether a complaint has failed to state a claim, the Court examines whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 663.  Courts "must construe [a complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021).  However, courts must also "disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'" *Id.* at 107 (quoting *Twombly*, 550 U.S. at 555).

Plaintiff alleges that Defendants violated the CFAA.  Am. Compl. ¶¶ 80–84. Specifically, Plaintiff alleges that "[t]he access records of [Plaintiff's] Twitter account indicate continuous and persistent access via an unknown, third-party Slack platform account." *Id.* ¶ 56.  Plaintiff contends that, "[u]pon information and belief, the parties responsible for the unauthorized account access of [Plaintiff's] Twitter account are one or more of the Identified Defendants and/or unnamed defendants (John Does) in this complaint" and that, at a minimum, "such information is in the possession, custody, and/or control of one or more of the Identified Defendants." *Id.* ¶ 58.

To state a claim under the CFAA's private cause of action, Plaintiff must plead facts establishing that Defendants "(1) accessed a 'protected computer'; (2) 'without any authorization or exceeding its authorized access'; and (3) caused 'loss' in excess of $5,000." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015) (citing 18 U.S.C. § 1030(g)).  Under the CFAA, "loss" entails "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).  The

3

term "loss" in this context is "construed narrowly" and "must relate to the victim's computer systems." *Collins v. MCA Receivables, LLC*, No. 23-CV-353 (AT), 2024 WL 246111, at *8 (S.D.N.Y. Jan. 23, 2024).

Here, Plaintiff has not pleaded that he suffered a loss that is cognizable under the CFAA. Plaintiff alleges that "[a]s a direct and proximate result of Defendants' conduct in violation of the CFAA, [Plaintiff] has suffered and will continue to suffer damages in excess of $5,000." Am. Compl. ¶ 83. This is a mere "formulaic recitation" of the loss element of a CFAA cause of action, *Twombly*, 550 U.S. at 555, and it does not establish any factual basis for Plaintiff's alleged loss. In his response to the Court's order to show cause, Plaintiff belatedly asserts that he has "hired and paid attorneys a minimum of $20,000.00 to investigate this security breach, which included researching and ascertaining the identities of Defendants through court-sanctioned discovery." Pl. Resp. at 2.[2] The Court is not obligated to consider these assertions, which are absent from the Amended Complaint. *See Collins*, 2024 WL 246111, at *8 ("[A]llegations raised for the first time in an opposition brief cannot defeat a motion to dismiss, and such allegations do not automatically amend the complaint." (quoting *Lee v. Saul*, No. 19-CV-6553, 2022 WL 873511, at *4 (S.D.N.Y. Mar. 23, 2022))).

However, the Court will nonetheless consider these newly asserted facts as if they were part of the Amended Complaint, given the *sua sponte* nature of the Court's review of the legal sufficiency of Plaintiff's CFAA claim. Plaintiff cites *Feldman v.*

---

[2] Page references use ECF pagination unless otherwise noted.

*Comp Trading, LLC*, No. 19-CV-4452-RPK-RLM, 2021 WL 930222, at *6 (E.D.N.Y. Mar. 11, 2021), which he asserts held that the plaintiffs "adequately alleged that they suffered a loss of over $5,000 by relying on payments to information technology specialists and attorneys to investigate, remedy, and secure the e-mail account." Pl. Resp. at 2–3. Plaintiff asserts that "[t]his case is not any different." *Id.* at 3. The Court disagrees.

In *Feldman*, the plaintiffs alleged that they suffered more than $5,000 in damages "in connection with identifying evidence of a breach," including "assessing any damage such a breach may have caused, determining whether any remedial measures were necessary, and implementing such remedial measures." 2021 WL 930222, at *2 (citation modified). Specifically, plaintiffs alleged

> that they paid at least $2,000 in fees to "IT specialists" to investigate, remedy, and secure the Feldman account and other potentially at-risk email accounts; paid at least $2,300 in fees to attorneys "for investigative costs"; and incurred at least $4,000 "in lost employee time diverted to the investigation and remediation of the breach" of the Feldman account.

*Id.* In other words, the *Feldman* plaintiffs aggregated the total costs of "responding to an offense, conducting a damage assessment, and restoring the [email] to its condition prior to the offense," including "any revenue lost, cost incurred, or other consequential damages incurred *because of* interruption of service." *See* 18 U.S.C. § 1030(e)(11) (emphasis added). These costs broadly went towards identifying the breach and devising and implementing necessary remedial measures to prevent its recurrence.

Plaintiff here has not alleged any such loss. Plaintiff asserts that he has hired attorneys to "investigate this security breach," without explaining in any detail what this investigation entailed. Pl. Resp. at 2. Moreover, the only additional piece of information Plaintiff provides is that the activities of the attorneys "included researching and ascertaining the identities of Defendants through court-sanctioned discovery." *Id.* This is not like the technical evaluation and remediation, relating to a computer system or email account, performed by the professionals in *Feldman*. What Plaintiff describes here are merely the costs of retaining counsel to represent him in litigation. Yet "the cost of bringing an action under the CFAA . . . is not sufficiently related to the computer or the unauthorized access itself to qualify as a consequential 'loss' under § 1030(g)." *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *17 (E.D.N.Y. Apr. 29, 2018); *see also id.* (noting that "courts appear to have uniformly rejected the conclusion that the cost of retaining and paying attorneys to prosecute an alleged CFAA violation is a 'loss' under the statute" and collecting cases); *Collins*, 2024 WL 246111, at *8 n.14 ("[S]everal courts across the country have concluded that litigation-related expenses do not qualify as 'losses' under the CFAA." (quoting *Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 736 (S.D.N.Y. 2020))).

Accordingly, Plaintiff has not alleged that he incurred a loss that is cognizable under the CFAA. Plaintiff's second cause of action pursuant to the CFAA is thus dismissed for failure to state a claim.

The Amended Complaint also invokes, in the alternative, the Court's diversity jurisdiction under 28 U.S.C. § 1332. Am. Compl. ¶ 10. However, diversity jurisdiction is only available when all adverse parties are completely diverse from one another. *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). Moreover, diversity jurisdiction is determined at the time the complaint was filed. *Leonard J. Strandberg & Assocs. v. Misan Constr. Corp.*, No. 08-CV-2939 (SJF) (ETB), 2010 WL 1565485, at *3 (E.D.N.Y. Apr. 19, 2010) (citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004)). Here, Plaintiff pleads that two named Defendants (*i.e.*, Froimovitz and Menczer) are, on information and belief, domiciled in New York. Amended Compl. ¶¶ 6, 8. As pleaded, this lack of complete diversity defeats the Court's subject matter jurisdiction.

In his letter in opposition to Defendant Obstfeld's request for a pre-motion conference, Plaintiff for the first time alleges that the domiciles of these named Defendants are in fact wholly unknown. Ltr. ("PMC Ltr.") 2, ECF No. 55 (July 14, 2025) ("[I]t is reasonably possible for said Defendants to reside outside of New York. While it is believed that Defendants Froimovitz and Menczer reside in New York, such locations are the last known addresses of said Defendants. However, it is unknown whether they *actually* reside at said addresses."). But "[f]ederal jurisdiction cannot be based on surmise or guesswork." *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 450 (S.D.N.Y. 2014) (quoting *Salzstein v. Bekins Van Lines, Inc.*, 747 F. Supp. 1281, 1283 (N.D. Ill. 1990)). Plaintiff suggests that his lack of definitive knowledge entitles him to jurisdictional discovery as to these Defendants'

7

actual domiciles.  *See* PMC Ltr. at 2.  However, "[c]ourts [allow] jurisdictional discovery where there has been a threshold showing for some basis to assert jurisdiction, such as facts that would support a colorable claim of jurisdiction." *Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013) (citing *Ayyash v. Bank Al-Madina*, No. 04-CV-9201 (GEL), 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006)).  Plaintiff has made no such showing here; to the contrary, Plaintiff's pleading demonstrates that, insofar as he was aware at the time the Amended Complaint was filed, these Defendants were domiciled in New York and, thus, there was not complete diversity between the parties.  *See Hai Yang Liu*, 5 F. Supp. 3d at 450 ("[T]he wait-and-see approach to diversity jurisdiction cannot be squared with the Supreme Court's stated preference that the existence of complete diversity be established at the time a lawsuit is filed." (citing *Grupo Dataflux*, 541 U.S. at 570–71)).

      Plaintiff further pleads that John Does 1-9 are of "unknown domicile."  Am. Compl. ¶ 9.  But where a defendant has an "unknown domicile," there is no diversity jurisdiction.  *See, e.g.*, *HTI Fin. Sols. Ltd. v. Manhattan SMI KG Props. Fin. Ltd.*, No. 24-CV-237 (DLC), 2024 WL 4452295, at *4 (S.D.N.Y. Oct. 9, 2024) (holding that, "because the citizenship of defendants . . . cannot be ascertained, their presence in the action [defeats] the exercise of diversity jurisdiction"); *Tan v. Doe*, No. 14-CV-2663 (ALC), 2014 WL 1779048, at *3 (S.D.N.Y. May 5, 2014) ("[D]iversity jurisdiction is lacking in this case because, while the complaint seeks more than $75,000, it does not contain any allegations that would allow the Court to plausibly infer that the John Doe Defendant is, unlike Plaintiffs, not a resident of the state of New York.").

Plaintiff has failed to state a claim under the CFAA. Accordingly, because this Court lacks either federal question or diversity jurisdiction over this proceeding, and because this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims in the absence of a federal claim for relief, this case is dismissed without prejudice for Plaintiff to pursue his state law claims in state court.

SO ORDERED.

    */s/ Nina R. Morrison*
    NINA R. MORRISON
    United States District Judge

Dated: November 14, 2025
    Brooklyn, New York